UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 09-768(DSD/SRN)

Cedar-Riverside People's
Center, Cook Area Health
Services, Inc., Lake Superior
Community Health Center,
Native American Community Clinic,
Open Cities Health Center, Inc.,
and West Side Community
Health Services, Inc.,

      Plaintiffs,

v.                                                **ORDER**

Minnesota Department of Human
Services and Cal Ludeman,
Commissioner, Department of
Human Services,

      Defendants.


    Gordon J. Apple, Esq., 787 Osceola Avenue, Suite 400, St. Paul, MN 55105 and James L. Feldesman, Esq., Kathy S. Ghiladi, Esq. and Feldesman, Tucker, Leifer & Fidell, 201 L Street N.W., Second Floor, Washington, D.C., 20036, counsel for plaintiffs.

    Robin C. Vue-Benson, Esq., Minnesota Attorney General's Office, Suite 900, 445 Minnesota Street, St. Paul, MN 55101, counsel for defendants.


This matter came before the court on June 12, 2009, upon plaintiffs' motion for a preliminary injunction. Plaintiffs and defendants appeared through counsel. Based upon a review of the file, record and proceedings herein, plaintiffs' motion for a preliminary injunction is granted.

## BACKGROUND

Plaintiffs are six federally qualified health centers ("FQHCs") that receive grants under section 330 of the Public Health Services Act ("PHSA"), 42 U.S.C. § 254b, to provide healthcare services to medically underserved populations. Defendants, the Minnesota Department of Human Services and its Commissioner, administer and manage Minnesota's Medicaid program.

Pursuant to the PHSA, FQHCs cannot deny a patient healthcare services due to a patient's inability to pay. 42 U.S.C. § 254b(k)(3)(G)(iii)(I). Moreover, FQHCs must provide healthcare services to persons enrolled in Medicaid. Id. § 254b(k)(3)(E). Section 330 grants, however, may only be used to pay the costs of poor, uninsured patients who cannot obtain care from private physicians or clinics. Id. §§ 254b(k)(3)(E)(I), (k)(3)(F). To ensure that section 330 grants are not used to cover costs that can be paid by Medicaid, the PHSA requires FQHCs to "make every reasonable effort to collect appropriate reimbursement for [the] costs [of] providing health services to persons who are entitled to insurance benefits under [Medicaid]." Id. §§ 254b(k)(3)(E)(I), (k)(3)(F). Furthermore, in cases such as this, where the state contracts with a managed care organization ("MCO") to deliver healthcare services to Medicaid patients, the Medicaid program requires the state to supplement any payments made by the MCO to the FQHC that do not equal the total cost of the services provided.

2

Id. § 1396a(bb)(5). The state must make the supplemental payments "in no case less frequently than every four months." Id. § 1396a(bb)(5)(B). The amount the state must pay is determined by a baseline rate, which is the amount paid per visit "equal to 100% of the average costs incurred during 1999 and 2000," adjusted for inflation and any change in the scope of services furnished since 1999. Id. §§ 1396a(bb)(2), (bb)(3).

Plaintiffs allege that defendants have not timely made complete supplemental payments in violation of §§ 1396a(bb)(5)(A) and (bb)(5)(B), and have unlawfully "rebased" the baseline rate in violation of §§ 1396a(bb)(1)-(5).[1] Plaintiffs now seek a preliminary injunction requiring defendants to comply with Medicaid's reimbursement requirements.

## DISCUSSION

A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of the injunction is on the movant. See Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). The court considers four familiar factors in determining whether a preliminary injunction should issue: (1) the threat of

---

[1] "'Rebasing' means moving the base year for the structure of costs of an input price index (for example, shifting the base year cost structure from fiscal year 1997 to fiscal year 2002)." Medicare Program; Inpatient Rehabilitation Facility Prospective Payment System, 70 Fed. Reg. 47,880, 47,909 (Aug. 15, 2005) (to be codified at 42 C.F.R. pt. 412).

3

irreparable harm to the movant in the absence of relief, (2) the balance between that harm and the harm that the relief may cause the non-moving party, (3) the likelihood of the movant's ultimate success on the merits and (4) the public interest. Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).[2] The court balances the equitable nature of all four factors to determine whether a preliminary injunction is warranted. Dataphase at 113; see also Taylor Corp. v. Four Seasons Greetings, LLC, 315 F.3d 1039, 1041 (8th Cir. 2003).

I. **Threat of Irreparable Harm**

Plaintiffs must first establish that irreparable harm will result without injunctive relief. "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009). "Possible or speculative harm is not enough." Graham Webb Int'l v. Helene Curtis, Inc., 17 F. Supp. 2d 919, 924 (D. Minn.

---

[2] Plaintiffs argue that the court should apply a reasonable cause standard to determine whether a preliminary injunction should issue rather than Dataphase's equitable principles. See Burlington N. R.R. Co. v. Bair, 957 F.2d 599, 601-03 (8th Cir. 1992) (congressional provision for injunctive relief limits court's traditional equitable discretion and plaintiff need show only reasonable cause for injunction to issue) (citing Weinberger v. Romero-Barcelo, 456 U.S. 305, 313 (1982)). Plaintiffs, however, cite no provision of the Medicaid program that expressly provides for injunctive relief, nor do they explain how its statutory scheme limits the court's equitable discretion. Therefore, the court applies the traditional Dataphase test.

4

1998). Rather, plaintiffs must show that a significant risk of harm exists. See Johnson v. Bd. of Police Comm'rs, 351 F. Supp. 2d 929, 945 (E.D. Mo. 2004).

Plaintiffs argue that they have been irreparably harmed by defendants' failure to make timely and complete supplemental payments and defendants' engagement in rebasing. According to plaintiffs, defendants' actions have caused them to experience significant financial harm, requiring them to draw down their credit lines, skip employer pension contributions for staff, institute layoffs and reduce clinic hours. (Pls.' Ex. C ¶ 18.) At least one plaintiff may soon declare bankruptcy and the other plaintiffs risk being forced to cease operations. (Pls.' Ex. B ¶ 18.) As a result, plaintiffs are unable to provide needy patients essential health services.

Defendants acknowledge that they owe plaintiffs some supplemental payments dating back to 2003. Defendants argue, however, that plaintiffs' difficult economic position is not irreparable due to two mitigating steps taken by defendants. First, defendants state that they have offered plaintiffs interim payments to make up the difference between what defendants have paid and what they owe. Second, defendants maintain that they are on the cusp of implementing a new mainframe application that will more accurately determine the amount of the supplemental payments and enable them to remit the money on time.

The court determines that plaintiffs are harmed due to defendants' failure to timely make complete supplemental payments. See Three Lower Counties Cmty. Health Servs., Inc. v. Maryland, 498 F.3d 294, 303 (4th Cir. 2007) (section 1396a(bb)(5) requires states to pay fully compensatory supplemental payments at least every four months); H.R. Rep. No. 101-247, at 392 (1989), as reprinted in 1989 U.S.C.C.A.N. 1906, 2118-19 ("To the extent that the Medicaid program is not covering the cost of treating its own beneficiaries, it is compromising the ability of [FQHCs] to meet the primary care needs of those without any public or private coverage whatsoever."). Moreover, such harm is irreparable because plaintiffs continue to experience a substantial loss of revenue, may face bankruptcy and there is no guarantee that defendants will follow through on their promises to make future timely payments. See Doran v. Salem Inn, Inc., 422 U.S. 922, 932 (1975) (threat of substantial loss of business and bankruptcy constituted irreparable harm); Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 76 (1st Cir. 2005) (irreparable harm existed when plaintiff owed mortgage payments and faced foreclosure); Packard Elevator v. I.C.C., 782 F.2d 112, 115 (8th Cir. 1986) (monetary loss that threatens existence of business may constitute irreparable harm). Furthermore, the doctrine of sovereign immunity heightens the importance of preliminary injunctive relief because of the likely unavailability of money damages should plaintiffs prevail. See

Entergy, Ark. Inc., v. Nebraska, 210 F.3d 887, 889 (8th Cir. 2000). Therefore, the first Dataphase factor weighs in favor of plaintiffs.

**II. Balance of Harms**

Under the second factor, the court considers whether the irreparable harm to the movants outweighs any potential harm to the nonmovants should the injunction issue. See Dataphase, 640 F.2d at 114. In this case, defendants do not argue that the cost of compliance with or the administration of Medicaid's reimbursement requirements would harm them. The only harm defendants allege is that a preliminary injunction would create uncertainty about whether defendants should implement the mainframe application. This potential harm, however, does not outweigh the actual harm suffered by plaintiffs. Therefore, this factor weighs in favor of issuing a preliminary injunction.

**III. Likelihood of Success on the Merits**

The court next considers whether the movant will prevail on the merits. While not overriding the other Dataphase factors, the likelihood of success on the merits is a preeminent consideration. See Minn. Ass'n of Nurse Anesthetists v. Unity Hosp., 59 F.3d 80, 83 (8th Cir. 1995).

Defendants argue that plaintiffs are not likely to succeed because section 1396a(bb)(5)(B)'s requirement that a state make supplemental payments "in no case less frequently than every four

7

months" is ambiguous. 42 U.S.C. § 1396a(bb)(5)(B). According to defendants, this provision requires only a regular stream of supplemental payments, not payment in full. Section 1396a(bb)(5)(B), however, "plainly provides" that the state must "pay FQHCs *fully compensatory* supplemental payments not less frequently than four months after [the state] has received the claim for supplemental payment." Three Lower Counties Cmty. Health Servs., 498 F.3d at 303 (emphasis in original); see also Rio Grande Cmty. Health Ctr., 397 F.3d at 75 ("[T]he commands of § 1396a(bb) are written in highly specific terms. The language here is extremely clear and narrow: ... it gives a maximum duration (4 months) between [supplemental] payments.").

Defendants also deny that they have engaged in rebasing and argue that they properly adjusted the baseline rate to reflect changes in the FQHCs' scope of services. (Krautbauer Aff. ¶¶ 47-49.) Record evidence, however, indicates that defendants' adjustments were based on data for years other than 1999 and 2000 and therefore constitute rebasing in violation of 42 U.S.C. §§ 1396a(bb)(1)-(5). (Pls.' Ex. C ¶ 20; Ex. E ¶ 19; Ex. I ¶ 23.) Accordingly, the court determines that Dataphase's third factor supports plaintiffs.

**IV. Public Interest**

Finally, the court considers the public interest. Here, there is a substantial public interest in ensuring that the poor and

8

uninsured receive primary healthcare services.  See Rio Grande Cmty. Health Ctr., 397 F.3d at 77 (shutting down FQHC would adversely affect patients).  Defendants counter that the public also has an interest in allowing Minnesota to administer its health care programs free from federal court intervention.  The public, however, has an equally strong interest in ensuring that states use federal funds for their designated purpose.  Therefore, the court determines that the public interest favors plaintiffs.  Based upon a balancing of the four Dataphase factors, the court determines that a preliminary injunction requiring defendants full compliance with Medicaid's reimbursement policies is warranted.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motion for a preliminary injunction [Doc. No. 5] is granted;

2. Defendants shall make full supplemental payments every four months as required by 42 U.S.C. § 1396a(bb)(5); and

3. Defendants shall calculate baseline payment rates in accordance with 42 U.S.C. §§ 1396a(bb)(1)-(5).

Dated: July 6, 2009

s/David S. Doty
David S. Doty, Judge
United States District Court